1

2

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 11, 2021

SEAN F. McAVOY, CLERK

3

4

5
### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF WASHINGTON

6

7   ANGELIQUE S.,[1]                          No.    4:20-CV-5096-EFS

8                          Plaintiff,

9            v.                              **ORDER DENYING PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND GRANTING DEFENDANT'S SUMMARY-JUDGMENT MOTION**

10  ANDREW M. SAUL, the Commissioner
    of Social Security,

11
                           Defendant.
12

13

14          Before the Court are the parties' cross summary-judgment motions.[2]

15  Plaintiff Angelique S. appeals the denial of benefits by the Administrative Law

16  Judge (ALJ). She alleges the ALJ erred by 1) improperly considering certain

17  medical opinions, 2) improperly determining her impairments did not meet or

18  equal a listed impairment, and 3) improperly determining step five of the

19

20  _____

21  [1] To protect the privacy of the social-security Plaintiff, the Court refers to her by

    first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).
22  [2] ECF Nos. 16 & 17.

23

        ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

sequential disability evaluation based on an incomplete hypothetical question. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court denies Plaintiff's Motion for Summary Judgment, ECF No. 16, and grants the Commissioner's Motion for Summary Judgment, ECF No. 17.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[3] 20 C.F.R. §§ 404.1520(a), 416.920(a).

[4] *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[5] *Id.* §§ 404.1520(b), 416.920(b).

[6] §§ 404.1520(b), 416.920(b).

or mental ability to do basic work activities.[7] If the claimant does not, benefits are denied.[8] If the claimant does, the disability evaluation proceeds to step three.[9]

Step three compares the claimant's impairment or impairments to several recognized by the Commissioner as so severe as to preclude substantial gainful activity.[10] If an impairment or combination of impairments meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If an impairment or combination of impairments does not meet or equal a listed impairment, the disability evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant can perform prior work, benefits are denied.[13] If the claimant cannot perform prior work, the disability evaluation proceeds to step five.

---

[7] *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[8] *Id.* §§ 404.1520(c), 416.920(c).

[9] §§ 404.1520(c), 416.920(c).

[10] *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[11] *Id.* §§ 404.1520(d), 416.920(d).

[12] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[13] §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

The claimant has the initial burden of establishing she is entitled to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show the claimant is not entitled to benefits.[17]

## II.    Factual and Procedural Summary

Plaintiff filed Title II and Title XVI applications, at first alleging a disability onset date of December 2, 2014.[18] Her claim was denied initially and upon reconsideration.[19] An administrative hearing was held by video before Administrative Law Judge Marie Palachuk.[20] At the video hearing, Plaintiff amended her alleged disability onset date to May 1, 2016.

---

[14] *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[15] 20 C.F.R. §§ 404.1520(g), 416.920(g).

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] AR 252-53, 259-62.

[19] AR 174-80, 181-87.

[20] AR 43-79.

In denying Plaintiff's disability claims, the ALJ made the following findings:

- Plaintiff met the insured status requirements through June 30, 2019.

- Step one: Plaintiff had not engaged in substantial gainful activity since May 1, 2016, the amended alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: obesity, with a Body Mass Index of 36; migraines; chronic pain syndrome versus fibromyalgia; asthma with ongoing smoking; depressive disorder; anxiety disorder; and personality disorder.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to:

  > perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can perform postural occasionally, except she cannot climb ladders, ropes, or scaffolds and no crawling; she should avoid all exposure to hazards; she cannot have concentrated exposure to respiratory irritants; from a psychological perspective, the claimant is capable of understanding, remembering and carrying out simple repetitive tasks and instructions; she can maintain concentration, persistence, and pace for two-hour intervals with regularly scheduled breaks; she is able to make simple judgment or decision-making; she can have brief interaction with the public, meaning that she can be in the vicinity or presence of the public, but no one-on-one interaction or collaboration; and she can have superficial interaction with coworkers, being defined as no collaborative tasks, no teamwork.

- Step four: Plaintiff was not capable of performing past relevant work.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as cafeteria attendant; tagger/ticketer; and collator operator.[21]

When assessing the medical-opinion evidence, the ALJ gave:

- great weight to the reviewing opinions of Robert Smiley, M.D. (except for Dr. Smiley's opinion that two absences a month for Plaintiff would be reasonable, which the ALJ assigned little weight), Nancy Winfrey, Ph.D., Lisa Ho, M.D., John Gilbert, Ph.D., and Patricia Kraft, Ph.D.;

- partial weight to the examining opinions of Lindsey Ruppel, D.O., and Amy Dowell, M.D.;

- and little weight to the examining opinions of N.K. Marks, Ph.D., John Fackenthall, D.O., Pavel Blagov, Ph.D., as well as the treating opinion of Josue Reyes, ARNP.[22]

The ALJ determined the examining opinions of Dr. Fackenthall and Dr. Blagov were too remote in time to be of significant evidentiary value.[23]

The ALJ also found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but her statements

---

[21] AR 17-27.

[22] AR 23-25.

[23] AR 25.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[24] Likewise, the ALJ discounted the lay statements from Plaintiff's mother.[25]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[26] Plaintiff timely appealed to this Court.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[27] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[28] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[29] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court

---

[24] AR 21.

[25] AR 25.

[26] AR 1-6.

[27] 42 U.S.C. § 405(g).

[28] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[29] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 7

upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[30] The Court considers the entire record.[31]

Further, the Court may not reverse an ALJ decision due to a harmless error.[32] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[33] The party appealing the ALJ's decision generally bears the burden of establishing harm.[34]

### IV.    Analysis

**A.    Medical Opinions: Plaintiff fails to establish error.**

Plaintiff challenges the ALJ's assignment of little weight to the opinion of Dr. N.K. Marks. She also challenges the assignment of little weight to Dr. Smiley's opinion that two absences a month would be reasonable for Plaintiff. She further

---

[30] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[31] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[32] *Molina*, 674 F.3d at 1111.

[33] *Id.* at 1115 (cleaned up).

[34] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 8

challenges the ALJ's assessment of the opinions of Dr. Dowell and Dr. Kraft. As discussed below, Plaintiff fails to establish the ALJ's weighing of the medical-opinion evidence was erroneous.

### 1.    Standard for Claims Filed Before March 27, 2017

The weighing of medical opinions depends on the nature of the medical relationship, i.e., whether the medical provider is 1) a treating physician, 2) an examining physician who examined but did not treat the claimant, or 3) a reviewing physician who neither treated nor examined the claimant.[35] Generally, more weight is given to the opinion of a treating physician than to an examining physician's opinion, and both treating and examining opinions are given more weight than the opinion of a reviewing physician.[36]

When a treating physician's or examining physician's opinion is not contradicted by another physician's opinion, it may be rejected only for "clear and convincing" reasons and, when it is contradicted, it may be rejected for "specific and legitimate reasons" supported by substantial evidence.[37] A reviewing physician's opinion may be rejected for specific and legitimate reasons supported by

---

[35] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

[36] *Id.*; *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

[37] *Lester*, 81 F.3d at 830.

substantial evidence, and the opinion of an "other" medical source[38] may be rejected for specific and germane reasons supported by substantial evidence.[39] The opinion of a reviewing physician serves as substantial evidence if it is supported by other independent evidence in the record.[40]

2.    Dr. Dowell

On May 20, 2017, Dr. Dowell performed a psychiatric evaluation of Plaintiff.[41] Dr. Dowell diagnosed Plaintiff with moderate recurrent Major Depressive Disorder and Generalized Anxiety Disorder and stated that both conditions were treatable with a good likelihood of recovery. Dr. Dowell stated that "with optimal treatment" Plaintiff would see improvement in both disorders within 12 months. As part of her evaluation, Dr. Dowell performed a mental status

---

[38] *See* 20 C.F.R. § 404.1502 (For claims filed before March 27, 2017, acceptable medical sources are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, qualified speech-language pathologists, licensed audiologists, licensed advanced practice registered nurses, and licensed physician assistants within their scope of practice—all other medical providers are "other" medical sources.).

[39] *Molina*, 674 F.3d at 1111; *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

[40] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

[41] AR 539-544.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

examination.[42] Based on that examination, Dr. Dowell noted that Plaintiff exhibited some "mild difficulties with memory and calculations, but otherwise appeared fairly high functioning cognitively."[43] Dr. Dowell opined that Plaintiff "would not have difficulty" in the following activities: performing simple and repetitive tasks or detailed and complex tasks; accepting instructions from supervisors or interacting with coworkers and the public; performing work activities on a consistent basis; and maintaining regular attendance in the workplace or completing a normal workday/work week without interruptions from a psychiatric condition.[44] Dr. Dowell opined that Plaintiff would have difficulty dealing with the usual stress encountered in the workplace due to her anxiety.[45]

The ALJ stated that she gave "some weight" to Dr. Dowell's opinion but gave "greater weight to the opinions of Dr. Winfrey, Dr. Gilbert, and Dr. Kraft, in order to give the claimant every benefit."[46] Plaintiff argues the ALJ committed legal error by failing to address Dr. Dowell's finding that Plaintiff would have difficulty dealing with the usual stress of the workplace. Plaintiff is correct to the extent she notes the ALJ did not expressly discuss Dr. Dowell's opinion that Plaintiff would

---

[42] AR 542-43.

[43] AR 542-43.

[44] AR 544.

[45] AR 544.

[46] AR 24.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

have difficulty dealing with the usual stress of the workplace—although the ALJ acknowledged this opinion,[47] she did not explain how it factored into her decision.

Plaintiff, however, cannot establish error in this regard because, by crafting an RFC that limits Plaintiff's workplace stress, the ALJ rationally incorporated Dr. Dowell's opinion into the disability determination.[48] The ALJ restricted Plaintiff to the following: simple repetitive tasks and instructions; simple judgment or decision-making; brief interaction with the public, meaning she can be in the presence of the public but no one-on-one interaction or collaboration; and superficial interaction with coworkers, meaning no teamwork or collaboration. As the ALJ noted, these limitations exceed those found by Dr. Dowell. For example, Dr. Dowell opined that Plaintiff could perform detailed and complex tasks and could interact with coworkers and the public without limitation. By restricting Plaintiff's RFC and limiting Plaintiff to simple tasks and minimal interaction with coworkers and the public, the ALJ adequately incorporated Dr. Dowell's finding that Plaintiff would have difficulty handling the "usual stress" encountered in the workplace.

---

[47] AR 23.

[48] *See Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

3.    Dr. Marks

On June 2, 2017, Dr. Marks performed a psychological evaluation of Plaintiff on behalf of the Washington State Department of Social and Health Services.[49] Dr. Marks diagnosed Plaintiff with unspecified anxiety disorder, unspecified depressive disorder, and unspecified personality disorder.[50] Based on the Beck Depression Inventory and Beck Anxiety Inventory, Dr. Marks noted that Plaintiff's depression and anxiety were in the severe range.[51] However, Plaintiff's Personality Assessment Inventory results "were inconclusive as [Plaintiff] endorsed too many symptoms."[52] Dr. Marks noted that, "Her results suggest that she was attempting to present herself in a negative manner."[53]

Dr. Marks also performed a mental status exam. She found Plaintiff's speech was minimal, well-organized, and progressive.[54] She also found Plaintiff's attitude and behavior to be cooperative, verbal, open, and with good eye contact.[55] She

---

[49] AR 23.

[50] AR 549.

[51] AR 549.

[52] AR 549.

[53] AR 549.

[54] AR 551.

[55] AR 551.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

found Plaintiff to have a depressed and anxious mood with flat affect.[56] Dr. Marks

concluded that the following were within normal limits: Plaintiff's thought process

and content, orientation, perception, memory, concentration, abstract thought, and

insight and judgment.[57] Dr. Marks' concluded that only Plaintiff's fund of

knowledge was not within normal limits.[58]

Dr. Marks indicated that Plaintiff was moderately limited in the following:

understanding, remembering, and persisting in tasks by following short and simple

instructions; and performing routine tasks without special supervision. Dr. Marks

concluded Plaintiff was markedly limited in the following activities: understanding,

remembering, and persisting in tasks by following detailed instructions;

performing activities within a schedule, maintaining regular attendance, and being

punctual within customary tolerances without special supervision; learning new

tasks; adapting to changes in a routine work setting; making simple work-related

decisions; asking simple questions or requesting assistance; maintaining

appropriate behavior in a work setting; and completing a normal work day and

work week without interruptions from psychologically based symptoms.[59]

Dr. Marks found Plaintiff was severely limited in her ability to perceive normal

_____

[56] AR 551.

[57] AR 552.

[58] AR 552.

[59] AR 550.

hazards and take appropriate precautions; communicating and performing effectively in a work setting; and setting realistic goals and planning independently.[60]

The ALJ discounted Dr. Marks's testimony because 1) Dr. Marks's opinion was inconsistent with the results of the mental status exam, 2) her opinion appeared to be based exclusively on Plaintiff's self-reports, and 3) Dr. Marks offered limitations significantly greater than those offered by Dr. Dowell, despite that Dr. Marks had evaluated Plaintiff only a few weeks after Dr. Dowell.[61]

Dr. Winfrey and Dr. Kraft, both reviewing psychologists, contradicted Dr. Marks's opinion. For example, Dr. Kraft concluded Plaintiff was not significantly limited in her ability to carry out simple and detailed instructions; was not significantly limited in her ability to perform activities within a schedule and maintain regular attendance; could ask for help; could make simple work-related decisions; could respond to changes in a work setting; could respond to hazards; and could appropriately handle criticism.[62]

Because Dr. Marks's examining opinion is contradicted, her opined limitations can be rejected by the ALJ for "specific and legitimate reasons"

---

[60] AR 550.

[61] AR 24.

[62] AR 142-43.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

supported by substantial evidence.[63] Internal inconsistency in Dr. Marks's evaluation, i.e., between Dr. Marks's mental status evaluation and her opinion, is a specific and legitimate reason to reject her opinion.[64] Plaintiff claims the ALJ did not actually identify any inconsistencies, but various inconsistencies are readily apparent. For example, Dr. Marks concluded Plaintiff would have moderate difficulty understanding and remembering short and simple instructions despite finding that Plaintiff's memory and perception were within normal limits. Likewise, Dr. Marks found Plaintiff was markedly limited in learning new tasks. However, this directly contradicts Dr. Marks' express notation that "No significant learning problems were noted and she should be able to handle most entry level jobs insofar as learning them."[65] Dr. Marks also found Plaintiff was markedly limited in making simple, work-related decisions. This directly contradicts Dr. Marks's finding that Plaintiff's perception, insight, and judgment were all within normal limits.

The opinions of Dr. Winfrey and Dr. Kraft are substantial evidence in support of the ALJ's rejection of Dr. Marks's opinion because those opinions are

---

[63] *Lester*, 81 F.3d at 830.

[64] *See Lingenfelter*, 504 F.3d at 1042.

[65] AR 553.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 16

corroborated by independent evidence in the record. [66] That independent evidence includes unremarkable results on multiple mental status exams.[67]

Plaintiff argues the ALJ rejected Dr. Marks's opined limitations because they were based on Plaintiff's self-reports. Indeed, the ALJ noted that instead of basing the limitations on the results of Plaintiff's mental status exam, Dr. Marks's opined limitations appeared to be based exclusively on Plaintiff's self-reports. Plaintiff argues rejection on this basis was improper, noting that the Ninth Circuit has recognized that "Diagnoses [of mental illness] will always depend in part on the patient's self-report, as well as on the clinician's observation of the patient."[68] Plaintiff's argument overlooks that, here, the clinician, Dr. Marks, observed that Plaintiff might have been attempting to present herself in a negative light. Therefore, the ALJ reasonably considered that Dr. Marks' opined limitations were based on Plaintiff's self-reports, the reliability of which even Dr. Marks questioned.[69]

---

[66] *Shalala*, 53 F.3d at 1041.

[67] *See* AR 542-43 (mental status exam administered by Dr. Dowell); AR 532 (Plaintiff scored 29/30 on mini-mental status exam administered by Dr. Ruppel).

[68] *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

[69] *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) ("If a treating provider's opinions are based "to a large extent" on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

      Plaintiff lastly argues the ALJ cannot properly reject Dr. Marks's opinion simply because it differed from Dr. Dowell's opinion. However, the ALJ did not reject Dr. Marks's opinion only because it differed from Dr. Dowell's. Rather, the significant difference between Dr. Marks's and Dr. Dowell's opinions merely bolstered the ALJ's decision to reject Dr. Marks's opinion. The ALJ's rejection of Dr. Marks's opinion was based primarily on the inconsistencies between Dr. Marks's evaluation of the Plaintiff and her opinions concerning the Plaintiff's limitations, as well as the fact that Dr. Marks's opined limitations seemed primarily based on Plaintiff's endorsement of symptoms. These were specific and legitimate reasons to reject Dr. Marks's opinion, and they are supported by substantial evidence.

---

discount the treating provider's opinion."). Dr. Marks was not the only medical provider to note that Plaintiff was attempting to present herself in a negative light. Dr. Ruppel noted that, during a physical examination, Plaintiff did not appear to be giving full effort. AR 533. In another instance, Plaintiff admittedly gave false information that she was experiencing suicidal ideation and had overdosed on pills in an attempt to be treated faster at the emergency room for an upset stomach. AR 444. The ALJ noted both instances. AR 22.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

    4.   <u>Dr. Smiley</u>

Dr. Smiley reviewed the medical evidence of record.[70] Based on his review of the records and, as relevant here, Dr. Smiley testified that Plaintiff had low back pain, migraine headaches for which she takes medication, and fibromyalgia for which she takes medication.[71] Based on these physical limitations, Dr. Smiley opined that Plaintiff could perform light work.[72] Dr. Smiley opined that Plaintiff should not work on ropes, ladders, or scaffolds, could never crawl, could not be around unprotected heights or hazardous machinery, and should not be exposed to concentrated respiratory irritants.[73] At the video hearing, Plaintiff's counsel and Dr. Smiley had the following exchange:[74]

> Plaintiff's Counsel: At 14F, her treating provider had also given the opinion for light work, but noted only being able to do part-time work, limited to 20 hours, again, noting chronic pain but also mental health symptoms. So, you know, he doesn't necessarily rate it out there. But as far as the migraines and the chronic pain syndrome or fibromyalgia, would it be reasonable that she would have some missed days of work due to those?
>
> Dr. Smiley: Yes.

---

[70] AR 48-53.

[71] AR 50.

[72] AR 51.

[73] AR 51-52.

[74] AR 52.

Plaintiff's Counsel: Okay. And I know at 7F they said the migraines are weekly or monthly. Doesn't say how many times, but if we were to say it would be reasonable to have two unscheduled absences per month?

Dr. Smiley: I think that's reasonable.

The ALJ gave great weight to Dr. Smiley's overall opinion but discounted his opinion that two absences a month would be reasonable because 1) it is contrary to the mild-to-moderate limitations he had earlier opined to, 2) it is unsupported by the longitudinal medical record which lacks significant objective findings, and 3) Dr. Smiley offered no basis to explain why two absences per month, as opposed to some other number, was reasonable.

Dr. Smiley's opinion is not directly contradicted by other medical professionals. Dr. Kraft and other psychologists opined that Plaintiff could work a regular schedule without interruption from psychological symptoms, but they did not offer opinions regarding the effect of Plaintiff's physical symptoms on her ability to work without absence. Because Dr. Smiley's opinion is not contradicted by another physician, the ALJ must provide clear and convincing reasons to reject it.[75]

The first reason provided by the ALJ is that Dr. Smiley's opinion contradicts the mild-to-moderate limitations that he had earlier endorsed. Dr. Smiley assessed some postural limitations, including that Plaintiff should not be on ropes or

[75] *Lester*, 81 F.3d at 830.

scaffolds, and some environmental limitations, including that she should not be on unprotected heights or hazardous machinery and she should not be exposed to respiratory irritants. While these limitations might be properly categorized as mild-to-moderate, they are not inherently inconsistent with absences due to migraines. Therefore, these mild-to-moderate limitations, standing alone, do not provide a clear and convincing reason to reject Dr. Smiley's opinion.

However, the second and third reasons provided by the ALJ do provide clear and convincing reasons to reject Dr. Smiley's opinion: the ALJ found Dr. Smiley's opinion was inconsistent with the longitudinal record and lacked explanation. A medical opinion may be discounted if it is inadequately supported by medical findings and observations.[76] Whether a medical opinion is consistent with the longitudinal record is a factor for the ALJ to consider.[77]

Here, the ALJ noted "the claimant's intermittent treatment and minimal objective findings do not support a conclusion effectively rendering her incapable of sustaining full-time work."[78] The underlying medical record demonstrates Plaintiff

---

[76] *Berryhill*, 869 F.3d at 1049; *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Garrison*, 759 F.3d at 1014.

[77] *See Lingenfelter*, 504 F.3d at 1042 (recognizing that the ALJ is to consider the consistency of the medical opinion with the record as a whole).

[78] AR 23.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

presented for treatment for migraines or headaches on only two occasions since her amended alleged onset date. Plaintiff presented for treatment for a migraine on February 9, 2017; however, she was not at that time taking the prophylactic medicine that had been effective for controlling her migraines in the past.[79] Multiple treatment notes demonstrate Plaintiff went on and off the prescribed prophylaxis migraine medication.[80] Even so, after February 9, 2017, Plaintiff did not again seek immediate medical care for a headache until October 18, 2018.[81] Elsewhere in the opinion, the ALJ noted that Plaintiff had very infrequently sought emergency treatment even though she frequently stopped taking her prophylaxis prescription.[82] Indeed, treatment notes during both a period in which Plaintiff was taking her prophylaxis medication and a period in which she was not describe her migraines as "stable."[83] The longitudinal record, therefore, supports that Plaintiff's migraines are generally controlled, especially when Plaintiff takes her prophylaxis prescription. That the longitudinal medical record was inconsistent with Dr. Smiley's opinion was a clear and convincing reason to discount the opinion.

---

[79] AR 537-38.

[80] *See* AR 585, 587.

[81] AR 673.

[82] AR 22.

[83] AR 578, 582.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Relatedly, the lack of explanation surrounding Dr. Smiley's opinion was also a clear and convincing reason to reject it.[84] An ALJ may permissibly reject opinions that do not offer any explanation for their limitations.[85] Here, Dr. Smiley was asked simply whether two absences a month was reasonable—he was not asked to explain why. Plaintiff argues Dr. Smiley's opinion was premised on a January 14, 2017 evaluation of Plaintiff by Dr. Ruppel (in which Dr. Ruppel simply noted Plaintiff reported migraines) and clinic notes from February 9, 2017 by Josue Reyes (one of two instances post-onset date in which Plaintiff sought emergency treatment for a migraine or headache). Notable here, however, is that Plaintiff's counsel—not Dr. Smiley—referenced the examination by Dr. Ruppel and the notes from Josue Reyes. Dr. Smiley did not explain what, if anything, from those records or other records informed his opinion that two absences a month was reasonable

---

[84] *See Lingenfelter*, 504 F.3d at 1042 (recognizing that a medical opinion is evaluated as to the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole; *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (same); *Coaty v. Colvin*, 673 Fed. Appx. 787, 788 (9th Cir. 2017) (affirming ALJ's determination that medical opinion was speculative).

[85] *Bray*, 554 F.3d at 1228 (recognizing that a medical opinion may be rejected if it is conclusory or inadequately supported); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

for Plaintiff. While Dr. Smiley's opinion is premised on the occurrence of weekly or monthly migraines (as Plaintiff reported to Dr. Ruppel), the occurrence of a migraine does not itself provide a sufficient basis for opining as to the frequency of work absences. Occurrence does not address the severity of the migraine or its impact on the functioning of the particular individual. Plaintiff's counsel did not ask—and Dr. Smiley did not offer—an explanation (i.e., regarding severity and duration) as to why Plaintiff's migraines were of the type to require two absences from work each month. In the absence of such explanation, the ALJ was not obligated to credit the opinion.[86] Plaintiff has not established the ALJ erred by rejecting Dr. Smiley's opinion.

> 5.   Dr. Kraft

Dr. Kraft reviewed the medical evidence of record on June 1, 2017. Dr. Kraft noted Plaintiff's diagnoses of moderate recurrent Major Depressive Disorder and Generalized Anxiety Disorder.[87] Dr. Kraft opined that Plaintiff was not significantly limited in the following: understanding; memory; ability to carry out simple instructions; ability to carry out detailed instructions; ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; ability to sustain an ordinary routine without special

---

[86] *Bray*, 554 F.3d at 1228.

[87] AR 138, 158.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

supervision; and the ability to make simple, work-related decisions.[88] Dr. Kraft opined Plaintiff was moderately limited in the following: the ability to maintain attention and concentration for extended periods; the ability to work in coordination with or in proximity to others without being distracted by them; and the ability to complete a normal workday and work week without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.[89] Dr. Kraft elaborated on these findings by stating that Plaintiff is "Capable of the completion of simple and complex tasks with some waxing and waning of [concentration, persistence, and pace] due to anxiety symptoms. Capable of performing simple and complex tasks within her physical limits at a productive rate with reasonable rest breaks the majority of the time."[90]

Plaintiff argues the ALJ erred by failing to consider whether she can maintain regular, continuous employment despite the need for breaks due to anxiety symptoms. Plaintiff asserts that she needs 30-minute breaks. She states this precludes continuous employment because the vocational expert testified that one to two unscheduled breaks per day to leave the workstation for 30 minutes due to mental health symptoms precludes competitive employment.

---

[88] AR 142.

[89] AR 142-43, 161-62.

[90] AR 143, 162.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Plaintiff's argument rests on a faulty premise. Neither Dr. Kraft nor any other medical provider opined that Plaintiff needed 30-minute breaks. Instead, Dr. Kraft opined simply that Plaintiff needed *reasonable* rest breaks. Moreover, contrary to Plaintiff's argument, the ALJ incorporated Dr. Kraft's opinion into Plaintiff's RFC.[91] In relevant part, the ALJ concluded Plaintiff had the RFC to maintain concentration, persistence, and pace for two-hour intervals with regularly scheduled breaks.[92] Plaintiff fails to establish error with respect to the ALJ's consideration of Dr. Kraft's opinion.

6. <u>Drs. Bailey and Hander</u>

Although not argued by Plaintiff, this Court must address the fact that the ALJ did not mention the January 2014 reviewing medical opinions of Dr. Bailey and Dr. Hander. While the ALJ should have addressed, if only briefly, these opinions, any error in not weighing these medical opinions is harmless. First, Dr. Bailey's and Dr. Hander's opinions were issued 19 months before the relevant disability period. Like the ALJ found as to Dr. Fackenthall's December 2013 examining opinion and Dr. Blagov's January 2014 examining opinion, these opinions were too remote in time to be of significant evidentiary value in assessing

---

[91] *See Rounds*, 807 F.3d at 1006 (focusing on whether the crafted RFC rationally incorporates the evidentiarily supported opined limitations).

[92] AR 20.

Plaintiff's functioning during the relevant disability period.[93] Second, the opined limitations by Dr. Bailey and Dr. Hander were consistent with the RFC. Dr. Bailey opined that Plaintiff could perform and sustain simple repetitive tasks with infrequent, superficial contact with the public. The RFC restricts Plaintiff to simple repetitive tasks and instructions, brief interaction with the public, and superficial interaction with coworkers. Dr. Hander opined that Plaintiff could do light work, with frequent climbing of ramps and stairs and stooping, occasional climbing of ladders, ropes, and scaffolds, and environmental limitations. The RFC was consistent with, or more restrictive than, Dr. Hander's opined limits.  Thus, the ALJ did not consequentially err by failing to explicitly weigh the opinions of Dr. Bailey and Dr. Hander.[94]

**B.     Step Three (Listings): Plaintiff fails to establish consequential error.**

At step three, the ALJ must determine if a claimant's impairments meet or equal a listed impairment.[95] To meet a listed impairment, the claimant has the burden of establishing that she meets each characteristic of a listed impairment

---

[93] AR 25.

[94] *See Rounds*, 807 F.3d at 1006 (focusing on whether the crafted RFC rationally incorporates the evidentiarily supported opined limitations).

[95] 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4).

relevant to her claim.[96] A claimant who does not meet the listing criteria may still be considered disabled at step three if her impairment or impairments medically equal a listed impairment.[107] Medical equivalence can be established three ways:

1) If an individual has an impairment that is described in the listings, but either:

    a. the individual does not exhibit one or more of the findings specified in the particular listing, or
    b. the individual exhibits all of the findings, but one or more of the findings is not as severe as specified in the particular listing,

then the impairment is medically equivalent to that listing if there are other findings related to the impairment that are at least of equal medical significance to the required criteria.

2) If an individual has an impairment(s) that is not described in the Listing of Impairments, findings related to the individual's actual impairment are compared with those for closely analogous listed impairments. If the findings related to the individual's actual impairment(s) are at least of equal medical significance to those of a listed impairment, the impairment(s) is medically equivalent to the analogous listing.

3) If an individual has a combination of impairments, no one of which meets a listing described in the Listing of Impairments, findings related to the individual's actual impairments are compared with those for closely analogous listed impairments. If the findings related to the individual's actual impairments are at least of equal medical significance to those of a listed impairment, the combination of impairments is medically equivalent to that listing.[97]

---

[96] *Id.* §§ 404.1525(d), 416.925(d); *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

[97] 20 C.F.R. §§ 404.1526(b), 416.926(b).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

"In evaluating a claimant with more than one impairment, the Commissioner must consider 'whether *the combination* of [the claimant's] impairments is medically equal to" the relevant listing.[98] "The claimant's illnesses 'must be considered in combination and must not be fragmentized in evaluating their effects.'"[99] "In determining whether the claimant's combination of impairments equals a particular listing, the Commissioner must consider whether h[er] 'symptoms, signs, and laboratory findings are at least equal in severity to the listed criteria.'"[100]

The ALJ must consider the relevant evidence to determine whether a claimant's impairments meet or equal one of the specified impairments set forth in the listings.[101] Generally, a "boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not [meet or equal a listing]."[102] However, the ALJ need not recite the reasons for her step-three determination under the listings portion of the decision so long as

---

[98] *Lester*, 81 F.3d at 829 (citing 20 C.F.R. § 404.1520(d)) (emphasis added).

[99] *Id.* (citing *Beecher v. Heckler*, 756 F.2d 693, 694–95 (9th Cir. 1985)).

[100] *Lester*, 81 F.3d at 829 (citing 20 C.F.R. § 404.1529(d)(3)).

[101] *Lewis v. Apfel,* 236 F.3d 503, 512 (9th Cir. 2001); 20 C.F.R. § 416.920(a)(4)(iii).

[102] *Lewis,* 236 F.3d at 512; *see also Marcia v. Sullivan,* 900 F.2d 172, 176 (9th Cir. 1990) (noting that the ALJ's unexplained finding at step three was reversible error).

the relevant evidence and underlying findings are discussed in the ALJ's

decision.[103] The key is whether this Court can conduct a meaningful review of the

ALJ's decision.[104]

Here, the ALJ found:

The claimant's physical impairments do not meet or medically equal
any listing, either singly or in combination.
In accordance with SSR 02-1p, the undersigned has also considered
whether the claimant's morbid obesity meets or equals any listing on
its own, as well as whether it, in combination with the claimant's
other severe impairment, equals a listing. The undersigned has also
carefully considered the claimant's obesity in determining her
residual functional capacity below.

The ALJ then found, "The severity of the claimant's mental impairments,

considered singly and in combination, do not meet or medically equal the criteria of

listings 12.04, 12.06, and 12.08."[105] Over several paragraphs, the ALJ explained

her conclusions with respect to Plaintiff's mental impairments, ultimately finding

that "the claimant's mental impairments d[id] not cause" at least two marked

limitations or one extreme limitation in the paragraph B criteria.[106]

Plaintiff contends the ALJ erred at step three of the sequential analysis by

1) failing to address any of Plaintiff's physical impairments, symptoms, or

---

[103] *Lewis,* 236 F.3d at 513.

[104] *See Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015).

[105] AR 19.

[106] AR 19-20.

limitations; 2) failing to consider Listing 14.09D (inflammatory arthritis); and 3) failing to consider fibromyalgia in conjunction with other impairments as required by SSR 12-2p.

Because the ALJ did not expressly discuss Plaintiff's migraines and fibromyalgia in the listings section, it is difficult to discern whether the ALJ evaluated the combined effect of Plaintiff's physical and mental impairments when determining whether Plaintiff met or medically equaled a listing. A fair reading of the decision is that the ALJ separately analyzed Plaintiff's physical impairments and mental impairments. This runs counter to the instruction that impairments should not be fragmented when evaluating their effects. Instead, *all* of Plaintiff's impairments—physical and mental—should have been evaluated together when determining whether Plaintiff met or equaled a listing.[107] This means the ALJ should have evaluated the symptoms, signs, and laboratory findings from Plaintiff's physical *and* mental impairments to determine whether, taken together, those symptoms, signs, and findings were at least equal in severity to a claimed listing. This is particularly important when a claimant has a mental disorder in addition to a physical disorder that causes acute or chronic pain, as the effects of pain are not always easily separated from the effects of a mental disorder.[108] The

---

[107] *See Celaya v. Halter*, 332 F.3d 1177, 1182 (9th Cir. 2003).

[108] *See Lester*, 81 F.3d at 829-30 (noting that, for claimant with chronic pain syndrome and affective disorder, the consequences of the physical and mental

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

ALJ erred to the extent she failed to consider the combined effects of Plaintiff's impairments. Nonetheless, any error that may have occurred here was harmless because, as explained below, Plaintiff has not demonstrated that she meets or equals Listing 14.09D or another listing.

      1.   <u>Listing 14.09D</u>

Because fibromyalgia is not a listed impairment, an ALJ looks to Listing 14.09D (inflammatory arthritis).  Listing 14.09D requires:

> Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at a marked level:
>
> 1. Limitation of activities of daily living.
> 2. Limitation in maintaining social functioning.
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

Plaintiff urges this Court to reverse because the ALJ did not expressly discuss Listing 14.09D or Plaintiff's physical impairments in relation to Listing 14.09D. However, "[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish

_____

impairments were inextricably linked and the Commissioner "erred as a matter of law in isolating the effects of [the claimant's] physical impairment from the effects of his mental impairment").

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 32

equivalence."[109] At the video hearing, Plaintiff did not offer a theory to the ALJ regarding how her impairments equal Listing 14.09D. Indeed, Listing 14.09D was not mentioned at all during the hearing. More important, Plaintiff fails to explain to this Court how her impairments equal Listing 14.09D. Rather, she asserts simply that, "when the record is properly considered in conjunction with the improperly rejected medical opinions and combined effects of her impairments, she meets or equals Listings 11.02, 12.04, 12.06, 12.08, 12.15, and 14.09D, singly or in combination, as a result of fibromyalgia pain, Dr. Mark's findings, multiple migraines per month limiting her to bedrest despite adherence to prescribed medication, and frequent exhibitions of tearfulness, anxiety, and nervous/fidgety behavior seen in the record."[110] Plaintiff's cursory assertion, however, is not sufficient to support Plaintiff's argument that she meets the multiple claimed listings, all of which are "purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'"[111] To the extent Plaintiff's argument relies on allegations that Dr. Marks's medical opinion was improperly rejected by the ALJ, this Court rejects that argument for the reasons explained above.

---

[109] *Barnhart*, 400 F.3d at 683.

[110] ECF No. 16.

[111] *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)).

Moreover, Plaintiff—not the Court—must flesh out and support her arguments with law and facts.[112] Plaintiff does not direct this Court to evidence in the record of the relevant and required constitutional symptoms of Listing 14.09D or their medical equivalents, nor does she explain why she has at least one marked limitation in one of the three enumerated categories.

In any case, substantial evidence—evidence cited by the ALJ, albeit related to other listings or the evaluation of paragraph B criteria—supports that Plaintiff is not markedly limited in her activities of daily living, social functioning, or concentration, persistence, or pace and, therefore, does not equal Listing 14.09D.

With respect to activities of daily living, the ALJ noted that Plaintiff can walk a couple of blocks before needing to rest, takes care of her daughter with the help of her mother, can make easy meals on a daily or weekly basis, and can do the laundry twice a week.[113] The ALJ also noted that Plaintiff can drive herself,[114] pay

---

[112] *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 930 (9th Cir. 2003) ("We require contentions to be accompanied by reasons."); *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones.").

[113] AR 21.

[114] AR 19.

bills, count change, handle a savings account, and use a checkbook.[115] The ability to perform these daily activities constitutes substantial evidence that Plaintiff is not markedly limited in her activities of daily living. This conclusion is further supported by additional evidence in the record, although not explicitly mentioned by the ALJ,[116] that Plaintiff can go to the store to shop for a few items for up to 30 minutes[117] and can bathe and groom herself without assistance.[118]

With respect to social functioning, the ALJ noted that Plaintiff does not like large crowds but interacted well during the relevant medical and psychological evaluations and self-reported that she got along "fine" with authority figures and has never had employment issues related to getting along with others.[119] The ALJ also discussed opinions from psychologists Dr. Winfrey, Dr. Gilbert, and Dr. Kraft, who all concluded that Plaintiff was, at most, moderately limited in her ability to

---

[115] AR 20.

[116] *See Fenton v. Colvin*, No. 6:14–00350–SI, 2015 WL 3464072, at *1 (D. Or. June 1, 2015) ("The Court is not permitted to affirm the Commissioner on a ground upon which the Commissioner did not rely, but the Court is permitted to consider additional support for a ground on which the ALJ relied.").

[117] AR 156, 335, 352.

[118] AR 351.

[119] AR 19.

interact with others and adapt or manage herself.[120] The ALJ noted those opinions were based on objective evidence in the underlying record.

With respect to the ability to concentrate, persist, or maintain pace, the ALJ again discussed the opinions of Dr. Winfrey, Dr. Gilbert, and Dr. Kraft. All three doctors found Plaintiff was, at most, moderately limited in her ability to concentrate, persist, or maintain pace.[121] The ALJ again noted these conclusions were based on objective evidence in the underlying record. Related to other listings, the ALJ also discussed the consultative evaluation by Dr. Ruppel in which Plaintiff could perform serial sevens and could spell "world" forward and backward. The ALJ also noted results from the examinations performed by Dr. Dowell and Dr. Marks, including that Plaintiff could perform basic math and could manage a savings account and checkbook.[122]

In short, while Plaintiff was diagnosed with fibromyalgia and migraines, those diagnoses do not alone provide a basis to conclude she equals Listing 14.09D.[123] Substantial evidence in the record supports the ALJ's conclusion that Plaintiff does not equal Listing 14.09D.

---

[120] AR 55-56, 105, 138.

[121] AR 55-56, 105, 138.

[122] AR 19.

[123] 20 C.F.R. §§ 404.1525(d), 416.925(d).

2.    <u>Other Listings</u>

Plaintiff also claims she meets or equals Listings 11.02 (epilepsy), 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), 12.08 (personality and impulse-control disorders), and 12.15 (trauma-related and stressor-related disorders), because of her fibromyalgia pain, Dr. Marks's opined limitations, multiple migraines per month limiting her to bedrest despite adherence to prescribed medication, and frequent exhibitions of tearfulness, anxiety, and nervous/fidgety behavior. This Court has already determined the ALJ did not err in rejecting Dr. Marks's opinion. Moreover, the ALJ considered Listings 12.04, 12.06, and 12.08. The ALJ found Plaintiff did not satisfy the paragraph B criteria for these listings because she had only mild-to-moderate limitations. The ALJ supported her decision with reference to the results of consultative examinations conducted by Dr. Ruppel and Dr. Marks, as well as the psychiatric evaluation conducted by Dr. Dowell.[124] Reliance on those opinions, which are corroborated by independent evidence in the medical record, was not error. Furthermore, as noted above, Plaintiff makes only a perfunctory effort to argue to this Court why she meets Listings 12.04, 12.06, and 12.08. This minimal effort is insufficient to present this Court with a plausible theory that incorporates law and facts into an explanation of why Plaintiff meets the claimed listings. This

---

[124] AR 19.

Court cannot make the arguments for Plaintiff. Plaintiff has likewise failed to put flesh on the bones of her argument that she meets Listings 11.02 and 12.15.[125]

Plaintiff fails to establish the ALJ erred in finding she does not meet or equal a listed impairment.

## C.  Step Five: Plaintiff fails to establish error.

Plaintiff argues the ALJ erred at step five because the vocational expert's testimony was based on an incomplete hypothetical that failed to include the opined absenteeism and unproductivity limitations. Plaintiff's argument is based entirely on her initial argument that the ALJ erred in considering the medical-opinion evidence. For the above-explained reasons, the ALJ's consideration of the medical-opinion evidence was legally sufficient and supported by substantial evidence. The ALJ did not err in assessing the RFC or finding Plaintiff capable of performing work existing in the national economy.[126]

### V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

---

[125] *See McPherson*, 125 F.3d at 995-96.

[126] *See Magallanes v. Bowen*, 881 F.2d 747, 756–57 (9th Cir. 1989) (holding it is proper for the ALJ to limit a hypothetical to those restrictions supported by substantial evidence in the record).

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of the Commissioner.

4.    The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and provide copies to all counsel.

**DATED** this 11th day of June 2021.

                          s/Edward F. Shea
                        EDWARD F. SHEA
                  Senior United States District Judge